

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 23, 2020**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **REDDY ICE HOLDINGS, INC.,** | § | **Case No. 12-32349-SGJ-11** |
| | § | |
| **Reorganized Debtor.** | § | **(Jointly Administered)** |
| | § | |

## MEMORANDUM OPINION IN SUPPORT OF ORDER GRANTING REORGANIZED
## DEBTOR'S MOTION TO REOPEN BANKRUPTCY CASE
## FOR SOLE PURPOSE OF DETERMINING
## POST-CONFIRMATION U.S. TRUSTEE QUARTERLY FEES[1]

**I. Introduction: Surprise Billing, Chapter 11 Style.**

More than seven years ago, Reddy Ice Holdings, Inc. ("Reddy Holdings") and its related

entity Reddy Ice Corporation ("Reddy Corp.") (sometimes collectively referred to as the

"Reorganized Debtors"), swiftly and efficiently executed a multimillion-dollar prepackaged

---

[1] In this Memorandum Opinion, the court provides its findings of fact and conclusions of law in support of the Order Granting Reddy Ice Holdings Inc.'s Expedited Motion to Reopen Bankruptcy Case and Determining Post-Confirmation Quarterly Fees, entered on October 15, 2019. ECF No. 849.

Chapter 11 plan in their administratively consolidated bankruptcy cases. In fact, the Reorganized Debtors (which are engaged in the business of manufacturing and distributing packaged ice) managed to go effective on their confirmed plan a mere 49 days after filing their voluntary petitions. In many ways, it was the perfect, textbook "prepack" of a large publicly traded company. This contested matter originates from events that took place long after the final decree was entered closing their cases.

Specifically, years after the Reorganized Debtors successfully emerged from bankruptcy, lawyers for a putative class of plaintiffs that had sued the Reorganized Debtors pre-petition, for allegedly conspiring with other ice makers to fix the price of bags of ice, moved to reopen the Reddy Holdings bankruptcy case[2] for purely ministerial reasons. Specifically, the lawyers for the class plaintiffs needed a new order or orders from the bankruptcy court regarding a revised process for disbursing settlement funds to the class members. To elaborate, the bankruptcy court, in 2012, had approved a $700,000 settlement between the Reorganized Debtors and the class plaintiffs and, all these years later, the settlement funds had still not been fully disbursed; what was left of the settlement funds remained in a North Carolina plaintiffs' lawyer's trust account—for reasons that not only had nothing to do with the Reorganized Debtors but also are irrelevant to this opinion. Reddy Holdings filed a limited objection to reopening its bankruptcy case—arguing that it should not have to bear any liability for any U.S. Trustee quarterly fees that might accrue during any window of time that the case was reopened, particularly when the reopening of the case had nothing to do with it or its long-consummated plan. Reddy Holdings' position on this point seemed imminently reasonable to all concerned. Thus, the lawyers for the class plaintiffs and Reddy

---

[2] To be clear, the putative class of plaintiffs moved to open the case of Reddy Holdings only, not its related entity, Reddy Corp.

Holdings agreed (with notice to the U.S. Trustee and, in fact, his involvement in discussions) that *the class settlement funds would bear liability for any U.S. Trustee's fees that might accumulate during the brief window of time that the bankruptcy case was reopened*.

What happened next might best be described as the bankruptcy-world equivalent of a hypothetical patient who receives a surprise $250,000 medical bill, long after a brief hospital visit—a visit that he thought was entirely covered by his patient co-pay and insurance. Specifically, the following sequence of events occurred: (a) after obtaining orders from the bankruptcy court, the lawyers for the class plaintiffs implemented disbursement procedures for class members and all of the settlement funds were disbursed; (b) the process took longer than expected (having nothing to do with Reddy Holdings); (c) meanwhile, during the period of time the bankruptcy case was reopened, Congress, in late 2017—in what has been described as "stealth" legislation— amended 28 U.S.C. § 1930(a)(6), increasing the quarterly fee cap for large chapter 11 debtors *from $30,000 to $250,000* (an *833% increase*)[3]; (d) unaware (like much of the rest of the world) of this fee cap increase, Reddy Holdings, in 2018, implemented a routine refinancing of a $70 million corporate note on which it was obligated (this had nothing to do with its long-ago consummated prepackaged plan); and (e) the U.S. Trustee thereafter sent Reddy Holdings a bill for $250,000, which he calculated as the U.S. Trustee fees that Reddy Holdings owed for the window of time its case was reopened (calculated based on a $70 million "disbursement," that occurred when Reddy Holdings refinanced its bank note).

---

[3] In October 2017, Congress amended Title 28, section 1930, to provide for an 833% increase in the maximum post-confirmation quarterly fees payable by certain chapter 11 debtors with disbursements that equal or exceed $1 million when the U.S. Trustee System Fund balance is less than $200 million during the fiscal years of 2018-2022. 28 U.S.C. § 1930(a)(6)(B) (2017); Bankruptcy Judgeship Act of 2017, Pub. L. 115-72, Div. B, 131 Stat. 1224, 1232 (2017). One purpose of the Act was to increase the U.S. Trustee fees for the largest chapter 11 debtors. H.R. Rep. No. 115-130, at 8 (2017), *reprinted in* U.S.C.C.A.N. 154, 160. The U.S. Trustee System Fund balance currently is less than $200 million. *See* U.S. Dep't of Justice, Exec. Office of U.S. Trustees, Chapter 11 Quarterly Fees, https://www.justice.gov/ust/chapter-11-quarterly-fees. *See also discussions in In re Buffets, LLC*, 597 B.R. 588, 596 (Bankr. W.D. Tex. 2019) and *In re Life Partners Holdings, Inc.*, 606 B.R. 277, 281-82, 285 (Bankr. N.D. Tex. 2019).

This contested matter involves a request by Reddy Holdings to determine that it should not have to pay the surprise bill. The arguments made were varied: (a) a challenge to the Constitutionality of the increase in the U.S. Trustee fees as to Chapter 11 debtors who filed their cases prior to the increase[4]; (b) an assertion that the note refinancing should not be deemed a "disbursement" upon which U.S. Trustee fees should be assessed; and (c) the 2017 order reopening the bankruptcy case should operate as an estoppel on seeking these fees from Reddy Holdings when the order provided that only the settlement funds (albeit, now disbursed) would be obligated for U.S. Trustee fees.

For the reasons set forth below, the court declines to reach: (a) the Constitutional question; or (b) the "disbursement" definition question. Rather, the court concludes that the U.S. Trustee is now estopped from seeking payment from Reddy Holdings because of the order reopening the case indicating that the class plaintiffs' settlement funds would be the source for payment of any U.S. Trustee fees.

## II.     Background Facts.[5]

### A.     An Open and Shut Case.

On April 12, 2012, Reddy Holdings and Reddy Corp. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (Reddy Holdings and Reddy Corp. may sometimes collectively be referred to as the "Debtors" when referring to them during the pendency of their

---

[4] *See Buffets,* 597 B.R. at 596-97; *Life Partners*, 606 B.R. at 288-89 (both holding that the retroactive application of amendments to 28 U.S.C. § 1930(a)(6) violates the Due Process Clause). *But see, In re Exide Technologies,* No. 13-11482, 2020 WL 211400 at *5 (Bankr. D. Del. Jan. 9, 2020) ("[T]he 2017 Amendment [to 28 U.S.C. § 1930(a)(6)] is not a retroactive statute because it applies only to post-enactment date disbursements of debtors in cases pending on or after the enactment date. While an increase in the quarterly fees may not have been anticipated by [the debtor], that is insufficient to find the statute a violation of due process."); *In re Circuit City Stores,* 606 B.R. 260, 268-69 (Bankr. E.D. Va. 2019) (application of amendments to 28 U.S.C. § 1930(a)(6) to cases pending on the effective date of the amendments did not violate the antiretroactivity principle because the law is substantively prospective).

[5] The parties stipulated to all relevant facts. *See* ECF No. 845.

bankruptcy cases). The Debtors filed a prepackaged plan at the commencement of their jointly administered cases (the "Case"). The Debtors proceeded through bankruptcy swiftly and efficiently without any difficult obstacles:

- May 18, 2012 – the Debtors obtained bankruptcy court approval of a settlement (the "Class Action Settlement") between the Debtors and a putative class of plaintiffs who were indirect purchasers (*i.e.,* consumer-purchasers as opposed to retail-purchasers) of packaged ice produced by the Debtors between January 1, 2001 and March 6, 2008 (the "Class Plaintiffs"). The settlement created a fund in the amount of $700,000, designated as a Qualified Settlement Fund (the "QSF") (more about this later). The QSF was to be held in an escrow, subject to further court order;

- May 22, 2012 – The Debtors' plan of reorganization, as amended (the "Plan") was confirmed. The Debtors funded into the contemplated escrow the $700,000 payment required by the Class Action Settlement, but were to have no role in the ultimate administration or distributions from the QSF;

- May 31, 2012 – the Plan went effective, the Debtors emerged from bankruptcy;

- August 30, 2012 – the court approved expenditures, fees and incentive awards to be paid from the QSF; and

- September 30, 2013 – Final Decree entered, Case closed.

B.      A (Re)opened and Shut Case.

On January 29, 2016—nearly four years after the court approved the Class Action Settlement and the creation of the QSF—the Class Plaintiffs moved to reopen the long-closed Case so that the bankruptcy court could consider their motion for approval of a mechanism to finally process claims and distribute what was left of the $700,000 QSF (at this point, $386,309.89 of the

QSF had been paid out for fees and expenses, leaving $316,734.98).[6] The bankruptcy court was more-than-a-little surprised that the QSF had not long-ago been distributed to claimants/class members. But the Case had been closed, and no one had filed anything for the court to know. In any event, the Class Plaintiffs' intent at this time was—allegedly at the suggestion of the District Court for the Eastern District of Michigan (where the Class Action had originally been pending, as part of multidistrict litigation)—to combine the remaining funds in the QSF with settlement funds relating to another class action case against another ice manufacturer (the thought being that there would be efficiencies because the class members in both suits overlapped). This court signed an order allowing the QSF to be combined on March 23, 2016, and immediately re-closed the case (the "First Reopening Order").[7]

**C.    Here We Go Again: Another Reopening of the Case.**

A year later, the bankruptcy court learned that the Class Plaintiffs' counsel had been wrong. Apparently, the District Court for the Eastern District of Michigan did **not** think it was proper to combine the settlement funds. Thus, the prior order that the bankruptcy court had signed, at the request of Class Plaintiffs' counsel, regarding administration and disbursement of the remaining QSF funds, was not workable. So, on February 3, 2017—nearly five years after Debtors filed their Plan, more than three years after the final decree was entered, and nearly a year after the court closed the Case the first time—the Class Plaintiffs again moved to reopen Reddy Holdings' Case (the "Second Motion to Reopen"), for the limited purpose of obtaining the bankruptcy court's approval of yet another process for disbursing the remainder of the QSF.[8] The Second Motion to Reopen asked that the Case be immediately closed thereafter. Reddy Holdings objected to the

---

[6] ECF No. 782.

[7] ECF No. 789.

[8] ECF No. 791. To be clear, the request was that only the case of Reddy Holdings be reopened—not Reddy Corp.

Second Motion to Reopen, requesting that: (i) the Class Plaintiffs pay all U.S. Trustee costs and fees associated with the Case while it was opened; and (ii) Reddy Holdings be relieved from the obligation of filing any operating reports in the Case while it was opened. On April 17, 2017, the bankruptcy court entered an order (the "Second Reopening Order") titled, "Order Opening Case for Sole Purpose of Addressing Indirect Purchasers' QSF."[9]

The Second Reopening Order provided in relevant part that the Case would be reopened (again) with the following conditions being imposed:

> (1) reopening the [Reddy Holdings Case] no longer than necessary for the purpose of entering an order granting the relief sought and then promptly closing the case, (2) requiring the [Class Plaintiffs] to pay directly to the Office of the United States Trustee any United States Trustee fees which may become due as a result of reopening the [Reddy Holdings Case] for that short period and (3) any reasonable expense incurred by any requirement [Reddy Holdings] may have to file any operating reports will be paid by the [Class Plaintiffs][.]

In the Second Reopening Order, the bankruptcy court further stated "Any quarterly fee payments to the United States Trustee or payments to [Reddy Holdings] for its reasonable expenses incurred by any requirement that [Reddy Holdings] may have to file any operating reporting reports that may be due from the [Class Plaintiffs] shall be paid from the Qualified Settlement Fund established pursuant to this Court's prior Order[.]" The court further ordered that the QSF be transferred from the North Carolina Class Plaintiff's attorney's firm trust account to the bankruptcy court's registry.

On October 2, 2017, this court signed the Second Amended Order Opening Case for Sole Purpose of Addressing Indirect Purchasers' QSF (the "Amended Second Reopening Order") ordering that the Bankruptcy Clerk release $5,000 from the court's registry to Reddy Holdings for "its past and estimated future payments to the United States Trustee and reasonable expenses incurred in preparing and filing Quarterly Operating Reports, paying the quarterly fees as required

---

[9] ECF No. 795.

to the United States Trustee since this case was re-opened . . . until its projected closing date."[10] The United States Trustee signed off on the Amended Second Reopening Order as to form.

Time lingered. The second time the Case was reopened, things took much longer than anyone expected for the Class Plaintiffs' QSF matters to be resolved. Meanwhile, on July 2, 2018, Reddy Holdings happened to do a refinancing of its existing credit facilities, drawing on a $70 million term loan to repay a $31 million facility, with the balance of the term loan proceeds being used to make a capital contribution to Reddy Corp. Shortly thereafter, the QSF funds were finally distributed to participating class members and—because there had been a very low submission of claims by the class members represented by the Class Plaintiffs—some of the QSF funds were even distributed to a charity, Feeding America, as required by the Amended Second Reopening Order.[11]

On January 17, 2019, Reddy Holdings filed Debtor-in-Possession operating reports from the time the Case was reopened through December 31, 2018. The third quarter report identified $69.4M in disbursements (relating to the above-mentioned loan refinancing).[12] The Case was closed (again) one month later.

## D.     Third Time the Charm? A Third Reopening.

On September 25, 2019, Reddy Holdings, for the first time, became the party seeking to reopen its Case. It filed an Expedited Motion to Reopen Bankruptcy Case to Determine Post-

---

[10] ECF No. 809. The naming of this order and the orders it amended is unfortunate. The Amended Second Reopening Order amends ECF Nos. 807 and 808—not the Second Reopening Order, which was ECF No. 795.

[11] Recall that the class members were consumer-purchasers, as opposed to retail-purchasers, of packaged ice produced by the Debtors between January 1, 2001 and March 6, 2008. The bankruptcy court believed that the integrity of the process required *some* evidence or sworn declarations as to ice purchases for claims to be allowed—as opposed to mere bare statements that a person had purchased a bag of ice from the Debtors more than a decade ago. Perhaps unsurprisingly, there was a low rate of claims submitted.

[12] ECF No. 818.

Confirmation quarterly fees, *after receiving a $250,000 bill from the U.S. Trustee, due to the alleged "disbursements" Reddy Holdings made in connection with its note refinancing*.[13]

In its motion, Reddy Holdings made several arguments as to why it should not be responsible, including that the Class Plaintiffs were responsible for payment; 28 U.S.C. § 1930(a)(6), as amended in 2017, is unconstitutional; and that the distributions it made as part of its note refinancing are not "disbursements" for purposes of calculating quarterly fees. The U.S. Trustee sought to abate the contested matter due to appeals pending on the constitutionality issue at the Fifth Circuit.[14] The bankruptcy court abated the constitutionality issue but set a hearing on the "disbursements" issue and whether the U.S. Trustee was estopped from seeking payment from Reddy Holdings because of provisions of the Second Reopening Order. After a hearing, this court orally ruled that the Class Plaintiffs (really, their QSF) had been responsible for the quarterly fees, based on the Second Reopening Order, and that the U.S. Trustee was estopped from seeking payment from Reddy Holdings.

## III.     Legal Analysis.

### A.     Res Judicata v. Collateral Estoppel in the Bankruptcy Context.

Res judicata is a doctrine which affords preclusive effect to a judgment.[15] This preclusive effect applies to final judgments, orders, and decrees of a bankruptcy court.[16] "The rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim

---

[13] ECF No. 823

[14] *Buffets* and *Life Partners* are, at the time of issuance of this opinion, on appeal at the Fifth Circuit, *Hobbs v. Buffets, LLC (In re Buffets, LLC)*, Case No. 19-50765; *Neary v. Quilling (In re Life Partners Holdings, Inc.)*, Case No. 19-90041.

[15] *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).

[16] *Bullard v. Blue Hills Bank*, ⸺ U.S. ⸺, 135 S.Ct. 1686, 1692 (2015).

preclusion and (2) collateral estoppel or issue preclusion."[17] Claim preclusion, or true res judicata,

precludes parties from relitigating claims or causes of action that were or could have been raised

in earlier litigation.[18] Under issue preclusion, or collateral estoppel, once a court has decided an

issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue

in a suit on a different claim or cause of action involving a party to the first case.[19] "By precluding

parties from contesting matters that they have had a full and fair opportunity to litigate, these two

doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial

resources, and foster reliance on judicial action by minimizing the possibility of inconsistent

decisions."[20]

The unique nature of a bankruptcy case can blur the line between the two doctrines. Adding

to the confusion is that, as stated above, collateral estoppel is a doctrine encompassed by the rule

of res judicata. Because of this relationship, case law can muddy the waters regarding which

doctrine should apply. For example, a confirmation order typically involves claim preclusion or

true res judicata, because it serves as a final judgment on a party's claim and, in subsequent

litigation, the same party seeking to recover on that same claim. Yet, in *Bullard*, the Supreme Court

stated,

> Confirmation has preclusive effect, foreclosing relitigation of "any issue actually
> litigated by the parties and any issue necessarily determined by the confirmation
> order." 8 Collier ¶ 1327.02[1][c], at 1327–6; see also *United Student Aid Funds,
> Inc. v. Espinosa,* 559 U.S. 260, 275, 130 S.Ct. 1367, 176 L.Ed.2d 158
> (2010) (finding a confirmation order "enforceable and binding" on a creditor
> notwithstanding legal error when the creditor "had notice of the error and failed to
> object or timely appeal").[21]

---

[17] *Test Masters Educational Services, Inc. v. Singh,* 428 F.3d 559, 571 (5th Cir. 2005).

[18] *Id.*

[19] *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

[20] *Taylor,* 553 at 891.

[21] *Bullard*, 135 S.Ct. at 1692.

The specific issue before the Court in *Espinoza* was whether a legal error by the bankruptcy court rendered a confirmation order void, but a careful reading of the opinion, including the citation to the Supreme Court's earlier *Bailey* case (which applied true res judicata factors to bar a litigant's claim),[22] would show that it involved true res judicata because United Student Aid Funds' claims were fully and finally resolved pursuant to the confirmation order.[23] In *Espinoza,* the confirmation order may have disposed of the issue of whether Espinoza's student loan debt to United Student Aid Funds was dischargeable. However, this was incidental to the matter of whether the confirmation order extinguished United Student Aid Funds' claim against Espinoza. In order to adjudicate any dispute, a court must resolve the relevant issues to determine how it should rule. The key question is whether the subsequent claim or cause of action is the same or different than the claim that the parties made *or could have made* in the prior proceeding. If the answer is yes, res judicata may bar the subsequent action. If not, collateral estoppel may apply.

Keeping this in mind, the court believes that the doctrine which applies in this case is collateral estoppel.

**B.    The U.S. Trustee is Collaterally Estopped from Seeking Payment for the Quarterly Fees from Reddy Holdings Pursuant to the Second Reopening Order.**

Once a court has decided an issue of fact or law necessary to its judgment, collateral estoppel may apply to preclude relitigation of the issue in a suit on a different cause of action

---

[22] *Travelers Casualty & Surety Co. of America v. Bailey*, 557 U.S. 137, 152 (2009).

[23] *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 275 (2010); *see also Bailey,* 557 U.S. at 152 ("[O]nce the 1986 Orders became final on direct review . . . they became res judicata to the parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."). (Internal quotations omitted).

involving a party to the first case.[24] "To establish collateral estoppel under federal law one must show:

> (1) that the issue at stake be identical to the one involved in the prior litigation;
>
> (2) that the issue has been actually litigated in the prior litigation; and
>
> (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action."[25]

There is no federal requirement that the court conduct a trial or evidentiary hearing to conclude that an issue has been "actually litigated."[26] "The requirement that an issue be 'actually litigated' for collateral estoppel purposes simply requires that the issue is raised, contested by the parties, submitted for determination by the court, and determined."[27]

The issue at stake in this matter—***whether Reddy Holdings should bear responsibility for the quarterly fees that accrued while the Case was reopened for the second time***—is indistinguishable from the issue in the prior litigation that occurred in April 2017, when Reddy Holdings objected to the Case being reopened. Even the parties are identical: the U.S. Trustee, the Class Plaintiffs, and Reddy Holdings. The issue was actually litigated in the prior litigation in April 2017. Specifically: (1) Reddy Holdings raised the issue, in connection with the second reopening, of who would be responsible for the quarterly fees in its objection; (2) there was a hearing on the issue and a proposed order was submitted to the bankruptcy court for determination; and (3) the court signed the Second Reopening Order, determining the issue. The U.S. Trustee received notice of that hearing and, while it raised some issues with the Second Reopening Motion informally with

---

[24] *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

[25] *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009).

[26] *In re Keaty,* 397 F.3d 264, 272 (5th Cir. 2005) (citations omitted).

[27] *Id.* (citations omitted).

the Class Plaintiffs (unrelated to who would be responsible for paying the quarterly fees), it did not think that the matter was significant enough to even send someone to the hearing. Further, the U.S. Trustee did not appeal the Second Reopening Order at the time it was entered, nor raise the issue further when the QSF settlement funds were distributed, when the quarterly reports were filed, or at any time prior to the Case being closed. The determination of who would be responsible for paying the quarterly fees was a critical and necessary part of the "judgment" in the earlier action (*i.e.,* the Second Reopening Order), since—in the face of Reddy Holdings' compelling objection—the court would have denied the Second Reopening Motion absent a condition that the QSF be solely responsible for the U.S. Trustee fees.

In its briefing, the U.S. Trustee contends that collateral estoppel can only be applied where a judgment or order is ***final***. According to the U.S. Trustee, an order reopening a bankruptcy case is interlocutory and, thus, it is not estopped from pursing recovery for the quarterly fees. The court acknowledges that several courts that have considered the issue have determined that certain, ministerial orders reopening bankruptcy cases were interlocutory.[28] Perhaps, under the recent guidance of the Supreme Court in *Ritzen Group, Inc. v. Jackson Masonry, LLC*, a stronger case could be made that the Second Reopening Order was a final order.[29] In that case, the Court was

---

[28] *See, e.g., Kountaki v. Johnson (In re Kountaki)*, No. 07-3530, 2007 WL 4570161 at *2 (S.D. Tex. Dec. 26, 2007) (a one-sentence order reopening a bankruptcy case was a mechanical device, which did not touch on the merits of the party's claims and was therefore interlocutory); *In re Wilborn*, 205 B.R. 202, 206 (B.A.P. 9th Cir. 1996) ("The order granting the motion to reopen the [bankruptcy] case is interlocutory, because it did not resolve the merits of the nondischargeability complaint, but constituted a preliminary step in the nondischargeability process."); *In re Plumlee*, 236 B.R. 606, 609-10 (E.D. Va. 1999) ("[C]ourts do not regard an order reopening a debtor's estate as a final determination adverse to any party.") *see cf., Celtic Marine Corp. v. James C. Justice Companies, Inc.*, 760 F.3d 477, 480-81 (5th Cir. 2014) (In a maritime dispute for breach of contract, the court held that an order reopening a case to enforce a settlement agreement and to allow a party to amend and supplement its claims was simply procedural, permitting the party to pursue its claim and thus was interlocutory).

[29] No. 18-938, —— U.S. ——, 2020 WL 201023 (Jan. 14, 2020).

asked to determine whether an order denying a motion for relief from stay was interlocutory or final. In determining that the order was final, the Supreme Court reasoned that:

> A bankruptcy court's order ruling on a stay-relief motion disposes of a procedural unit anterior to, and separate from, claim-resolution proceedings. Adjudication of a stay-relief motion, as just observed, occurs before and apart from proceedings on the merits of creditors' claims: The motion initiates a discrete procedural sequence, including notice and a hearing, and the creditor's qualification for relief turns on the statutory standard, *i.e.,* "cause" or the presence of specified conditions.[30]

A motion to reopen a bankruptcy case also initiates a discrete procedural sequence, including notice and a hearing, where a movant's qualification for relief turns on a statutory standard. Section 350(b) of the Bankruptcy Code provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."[31] The Second Reopening Order was a somewhat detailed, substantive order that was issued on fulsome notice, for cause, and after a hearing. Moreover, the Second Reopening Order not only reopened a Chapter 11 case, but also allocated responsibility for payment of quarterly fees while the Case was open and transferred several hundred thousand dollars into the Court registry.

In any event, the court does not need to determine whether the order was final at the time it was initially entered. To the extent the Second Reopening Order was, in fact interlocutory and not appealable when it was initially entered, *it certainly eventually became final and appealable once subsequent orders were entered approving of the overall process for distribution of the QSF settlement funds*—the *raison d'etre* for reopening the Case.[32] There were actually five subsequent orders that dealt with class claims processing and the final disbursement of the QSF

---

[30] *Id.* at *5.

[31] 11 U.S.C. § 350(b).

[32] *See Kountaki*, 2007 WL 4570161 at *2 (motion to reopen denied as premature; if the court ultimately ruled in favor of the movant on the merits of its claim, the non-movant could still appeal the order reopening the case).

funds from the registry of the Bankruptcy Court.[33] None of these orders was ever appealed. The

last of the QSF funds were disbursed on or about October 30, 2018 and the Case was closed once

again on February 12, 2019. Finality would seem to have occurred at the latest when the last of

these five orders was entered. Thus, estoppel applies.

The U.S. Trustee next contends that estoppel should not apply because the Reorganized

Debtors and the Class Plaintiffs' QSF were *jointly* responsible for payment of the quarterly fees.

The U.S. Trustee's argument is based on paragraph 64 of the Reorganized Debtors' Confirmation

Order, which provides:

> Payment of Statutory Fees. In accordance with Article XIII.G of the Plan, all fees
> payable under section 1930 of title 28 of the United States Code, as determined by
> the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the
> Effective Date. All such fees that arise after the Effective Date, but before the
> closing of the Chapter 11 Cases shall be paid by the Reorganized Debtors.[34]

Reddy Holdings does not dispute that it was responsible for payment of quarterly fees before the

final decree was entered and the Case was closed pursuant to that final decree. The final decree

specifically required that the Reorganized Debtors pay all quarterly fees through the quarter ending

on September 30, 2013. Instead, the U.S. Trustee takes the position that the Confirmation Order

was silent as to who would be responsible for payment of quarterly fees where a party other than

the Reorganized Debtors sought to reopen the case. The court believes that the Confirmation Order

is not relevant to its determination that the Class Plaintiffs' QSF was responsible. Instead the

Second Reopening Order is dispositive. The Second Reopening Order made clear that the Class

Plaintiffs (*i.e.,* through the QSF) were responsible for paying the quarterly fees. The court does not

believe that it made a legal error in shifting responsibility to the Class Plaintiffs. Rather, it was

---

[33] ECF Nos. 800, 807, 808, 809, 812.

[34] ECF No. 432.

using the power granted to it under 11 U.S.C. § 105(a) to issue an order that was necessary and appropriate to carry out the provisions of 11 U.S.C. § 350(b), in light of the unique facts and circumstances of this Case. Even if the court exceeded its authority in doing so, the order remained enforceable and binding on the U.S. Trustee because it had notice of the error and failed to object or timely appeal.[35]

The U.S. Trustee also makes the point that applying collateral estoppel to allow debtors to escape responsibility for quarterly fees could lead to loophole mining and constant litigation regarding this issue. The court believes that the U.S. Trustee's argument is overstated. Reopening a closed chapter 11 case is not terribly common at baseline, and ***a request of a party, other than a reorganized debtor, to reopen a case over the reorganized debtor's objection is extremely rare***. In the rare occurrence that a case is reopened over a reorganized debtor's objection and the reorganized debtor seeks to shift quarterly fees to the moving party, the U.S. Trustee can participate in the process to ensure that there are sufficient funds to cover any fees that may be incurred. And, while loophole mining is always a concern, it gives the court great pause to create a rule which would generate acrimonious litigation any time a creditor or party-in-interest needs to reopen a case, but a reorganized debtor is unwilling to foot the bill. A rule which holds a reorganized debtor hostage to the reopening process could conceivably lead to unscrupulous litigants using that process to force an unfavorable settlement between them and the reorganized debtor. This is especially concerning where U.S. Trustee quarterly fees will be 833% higher than the normal fees for the period 2018-2022.

---

[35] *Espinoza,* 559 U.S. at 275; *see also Bailey,* 557 U.S. at 152-55 (declining to reach the issue of whether a bankruptcy court exceeded its authority in enjoining claims against non-debtor insurers because, under the principles of res judicata, a bankruptcy court's subject matter jurisdiction may not be collaterally attacked once an order becomes final and non-appealable).

Based upon a plain reading of the Second Reopening Order, the Class Plaintiff' QSF was responsible for payment of the quarterly fees. Since the U.S. Trustee failed to challenge the Second Reopening Order, the U.S. Trustee is now precluded from seeking payment from the Reorganized Debtor under the doctrine of collateral estoppel.

Because the court has reached this holding, the court will not address: (a) the challenge to the Constitutionality of the increase in the U.S. Trustee fees as to Chapter 11 debtors who filed their cases prior to the increase; nor (b) the question as to whether the Reddy Holdings' note refinancing should be excepted from the "disbursement" definition upon which U.S. Trustee fees should be assessed.

#### **#### END OF MEMORANDUM OPINION ####**